RYLES, WILSON & COMPANY, Respondents, v. SHEL-
LEY MANUFACTURING COMPANY, Appellant.

**Kansas City Court of Appeals, March 3, 1902.**

1. **Definitions: DEBT.** Debt means a sum of money due by certain
   and express agreement; it denotes any kind of a just demand.

2. **Attachment: DEBT FRAUDULENTLY CONTRACTED: STATU-
   TORY CONSTRUCTION.** A demand created by fraud of the de-
   fendant whereby he secures the money of the plaintiff is not a debt
   within the meaning of the attachment act even though the law im-
   plies a promise on the part of defendant to reimburse the plaintiff.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,*
Judge.

REVERSED.

*John G. Schaich* and *Henry Boyd Davis* for appellant.

(1) The language of the paragraph in the statute de-
fining the fourteenth ground of attachment is specific in its
terms and can not be enlarged beyond its terms. It is "where
the debt sued for was fraudulently contracted on the part of
the debtor." Three elements are essential: 1. There must
be a debt. 2. It must have been contracted. 3. It must
have been fraudulently contracted on the part of the debtor;
and in this there must have been a fraudulent intention. (2)
The debt must arise out of a contract, not out of a tort; out
of a promise, not out of a claim for damages for breach of
contract. Finley v. Bryson, 84 Mo. 664; Sunday Mirror v.
Galvin, 55 Mo. App. 412.

*Lathrop, Morrow, Fox & Moore* for respondents.

(1) The relation of debtor and creditor existed between appellant and respondents from the moment appellant refused to fulfill his contract. In determining whether this relation existed or not, we must be governed by the definitions and interpretations given of the word "debt." 8 Am. and Eng. Ency. Law (2 Ed.), p. 983; Anderson's Law Dict.; Bouvier's Law Dict.; Bachman v. Lewis, 27 Mo. App. 81; Drake on Attachment, sec. 9; Dryden v. Kellogg, 2 Mo. App. 87; Bank v. Taylor, 64 Hun. 502; Young v. Cooper, 12 N. W. 91; Hearne v. Keath, 63 Mo. 84. (2) In the cases of Finlay v. Bryson, 84 Mo. 664, and Sunday Mirror Co. v. Galvin, 55 Mo. App. 412, the actions rested on conversions, and the court held that what plaintiff was entitled to in those cases was damages, and that there was, in legal contemplation, no debt. This is the basis of the ruling in those cases. In this case, however, we say there is a debt. The sale was made to plaintiffs by sample. This implied a warranty that the goods to be delivered were equal in quality to the sample. Voss v. McGuire, 18 Mo. App. 477; Hollander v. Koetter, 20 Mo. App. 79; Viertel v. Smith, 55 Mo. App. 617; Bronson v. Turner, 77 Mo. 489; Johnson v. Agricultural Co., 20 Mo. App. 100. When the right of rescission was exercised, whether it arose because of a breach of warranty or because of a fraudulent representation, then the money or other thing of value paid on the contract and in the hands of the vendor, is certainly a debt owing from the vendor to the vendee, because the law at once implies a contract for its repayment to the defrauded vendee. Glass Works v. Robertson, 73 Mo. App. 154.

BROADDUS, J.—This is an action by plaintiffs to recover of the defendant the sum of $372.40, the amount paid by them to the defendant as the purchase price of a quantity

of catsup. In December, 1899, the defendant, who was engaged in the manufacture of catsup in the city of St. Louis, through the agency of Gable, Johnson & Jones, a firm doing business in Kansas City, Missouri, sold the catsup to the plaintiffs, who were merchants in Kansas City also. The goods were sold by sample, and the agreed purchase price was $380. The defendant agreed to ship the goods to Kansas City, freight prepaid, to be paid for in thirty days, with the option on the part of the plaintiffs to pay for them in ten days, less a two per cent discount. Within ten days after the receipt of the invoice of the goods, the plaintiffs paid for them—the purchase price less the two per cent discount.

Some of the goods were sold by plaintiffs to customers who notified them that they were not merchantable catsup. Upon examination they were found to be practically worthless. On the trial it was shown that the original sale was made by sample of standard quality. There was no conflicting evidence except the claim made by the defendant that the goods had been injured by the cold weather, in transit, for which he was not liable. The samples upon which the catsup was sold and that delivered were offered in evidence. The court found for the plaintiffs.

The plaintiffs, in aid of their suit, also instituted an attachment, the ground for which was: "That the debt sued for was fraudulently contracted on the part of the debtor." The defendant interposed a plea in abatement. The case was tried by the court sitting as a jury. The finding was in writing, which, among other matters, is to the effect that the defendant shipped the goods to the plaintiffs with the intent to defraud them, and that they were worthless and could not be sold as catsup. The attachment was sustained and the defendant appealed. There was only one instruction asked. The defendant requested the court to declare as a matter of law, "that the evidence does not sustain the allegations in the affidavit in attachment," which was refused. The defendant

raises two questions in this court as to the correctness of the court's finding, to-wit: First, that the evidence does not show that there was a debt; and, second, that the evidence does not sustain the allegation of the affidavit.

If the foundation of the plaintiffs' claim is not a debt, within the meaning of the fourteenth subdivision of the attachment law, the plaintiffs' case falls. The word "debt" is defined to be, "A sum of money due by certain and express agreement; it denotes any kind of a just demand." Bouvier's Law Dictionary. The definition is equally as comprehensive and correct as any of those given by other lexicographers. A "demand," by the same author, is defined as "a claim, a legal obligation." The defendant contends that the debt meant by the statute, must be a "direct obligation to pay money, a sum certain," and that "if there is a claim or right of action, the value or amount of which can not be fixed without judicial inquiry and ascertainment, it can not be a debt within the meaning of the statute."

We will not attempt to analyze the entire contention of the defendant, but will confine ourselves to the main point in issue, viz.: Was the suit founded on such a debt as would authorize an attachment under the attachment law? In the first place, when the defendant sold the plaintiffs the goods in question, it was the plaintiffs and not the defendant who contracted the debt, and it was they who became the debtors. The question naturally suggests itself, when and how did the defendant contract the debt, if it be a debt? Certainly not by express contract. And it is not claimed that the claim in suit was the result of an express contract. The contract in suit is such as is implied by law, that is, the defendant obtained money from plaintiffs for his worthless goods by fraud, and the law implies a promise to pay it back to plaintiffs. People v. Spier, 77 N. Y. 144; Ogden v. Saunders, 12 Wheaton 213; Beach on Modern Law of Contracts, sec. 15. We are of the opinion that the contract implied by law, from the wrongful

acts of the defendant, does not constitute a debt fraudulently contracted on the part of the debtor. In the sense of the statute he did not contract a debt.

In Finley v. Bryson, 84 Mo. 664, where the facts showed an unlawful conversion by the defendant of the plaintiff's money, the court held that the debt sued for would not authorize an attachment. The facts were that the defendant had received four mules from the plaintiff with directions to sell them and deposit the proceeds to the plaintiff's credit. The defendant sold the mules and converted the proceeds to his own use, together with the sum of $180, the money of the plaintiff, which he drew from plaintiff's deposit without authority. Martin, Commissioner, who delivered the opinion of the court, said: "Debts induced by fraud are common things in our reports; and as such they answer the language of the fourteenth subdivision without going further. The fraudulent transaction referred to must culminate in a debt. The debtor must have been guilty of some material deceptive act, word or concealment, done or suffered by him with the intent to induce the opposite party to consent to the debt. . . . But the unlawful conversion of property or money results only in damages so far as the acts of the wrongdoer are concerned. As a matter of fact he agrees to no debt, nor can he lawfully treat it as such. That privilege belongs to the other side, not to him."

The present case is not unlike the one referred to, in principle, for in both, the alleged debt is founded upon tort, pure and simple, and not upon contract. There was no agreement that the defendant would pay the demand in suit. We believe that for the reason given in Finley v. Bryson, supra, which is approved by the St. Louis Court of Appeals in Sunday Mirror Co. v. Galvin, 55 Mo. App. 412, that the trial court erred in not sustaining defendant's demurrer to plaintiff's case.

The plaintiff has moved to dismiss defendant's appeal on several grounds, none of which are tenable.

For the reasons given the cause is reversed so far as relates to the attachment branch of the case. All concur.